IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DALE ANTHONY SHOOP,**

        **Plaintiff,**

v.                                                                     **Civil Action No. 5:08cv188**
                                                                    **(Judge Stamp)**

**GREGORY JENKINS, JESSE JARVIS,**
**JOSHUA BROWN, MR. RUDLOFF,**
**CHAD AND PRIME CARE MEDICAL,**

        **Defendants.**

## REPORT AND RECOMMENDATION

The *pro se* plaintiff initiated this case on December 29, 2008, by filing a civil rights complaint against the above-named defendants. On January 20, 2009, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $1.33. The plaintiff paid the initial partial filing fee on February 17, 2009. Accordingly, this case is before the undersigned for an initial review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01, et seq.

### I. The Complaint

In the complaint, the plaintiff asserts that on September 2, 2007, he was assaulted by three other inmates, including Jesse Jarvis ("Jarvis") and Gregory Jenkins ("Jenkins"). After the assault, the plaintiff "got on the call box" and contacted the guards. Correction Officer Joshua Brown ("Brown") was on duty in the tower and took the plaintiff's call. The plaintiff informed Brown that he had been assaulted, that he was injured and in severe pain, and that he was bleeding from his head. Brown told the plaintiff that he was sending guards to the plaintiff's cell. Brown also asked the plaintiff if he knew who assaulted him and the plaintiff stated that he did.

The plaintiff waited for the guards to arrive. When no one showed up after about ten minutes, the plaintiff "got back on the call box" and again spoke with Brown. The plaintiff again explained that he was bleeding from his head and was in severe pain. Brown told the plaintiff that there were guards on the way to help him. Somewhere between 20 to 30 minutes later, Correction Officer Welker ("Welker") responded to the plaintiff's unit to assist him. The plaintiff explained what had happened to him and asked Welker what had taken him so long to get there. Welker told the plaintiff that he had come as soon as Brown reported the need for assistance. Welker then helped the plaintiff to the medical unit.

Once in the medical unit, the plaintiff was examined by Nurse Darlin and Nurse April. During his examination, the nurses discovered what appeared to be stab or puncture wounds behind the plaintiff's left ear. The plaintiff was wrapped with gauze and sent to the city hospital. At the hospital, the plaintiff was examined by a doctor, x-rayed and pictures were taken of his injuries. As a result of the plaintiff's x-rays, the doctor determined that the plaintiff had a crack in the lower right side of his back. Therefore, the plaintiff was advised that upon his return to the jail, he should stay in the medical department for observation and that he should be kept on a bunk. The plaintiff was then taken back to the Eastern Regional Jail.

Upon his return to the jail, the plaintiff was taken to the medical department and assigned to a medical cell. However, the cell was a one man cell that already housed another inmate. Therefore, the plaintiff was told to sleep on the floor. The plaintiff complained to the Medical Director, Chad, but was told that nothing could be done. The plaintiff was told that the jail was overcrowded and they had no bunk within which to place him. The plaintiff explained the doctor's instructions, but was told that Chad ran the medical unit, not the doctor from the hospital.

Eventually, the plaintiff was given Motrin for pain.

The plaintiff then told Corporal Wilson ("Wilson") that he wanted to press charges against the inmates who had assaulted him. Thus, the plaintiff asked Wilson to contact the Sheriff's Department. The plaintiff asserts that the Sheriff's Department was never contacted, so three days later, when he was able to speak to his family, he asked them to call the Sheriff's Department. The plaintiff's mother did so and a deputy came to the jail and took a report. Battery charges were filed against Jarvis and Jenkins, to which they both pled and received sentences of time served.

As a result of the above-described incidents, the plaintiff asserts that his constitutional rights were violated by Brown when he failed to respond expediently to the plaintiff's claim for assistance. In support of this claim, the plaintiff asserts that Brown neglected to summon help immediately even after being told that the plaintiff had been severely injured in an assault. In addition, the plaintiff asserts that Chad violated his rights because he had the plaintiff sleep on the floor in direct contradiction to the instructions of the doctor from the hospital.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the amended complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal

fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### III. Analysis

#### A. Defendants Jarvis, Jenkins and Prime Care Medical

Although the plaintiff does not cite a jurisdictional basis for his claims, he does assert that his constitutional rights were violated. Therefore, because the mechanism for seeking the enforcement of a federal right against state actors in 42 U.S.C. § 1983, the Court has construed the plaintiff's claims as arising under § 1983. Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Thus, in order to state a successful claim under § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of a right guaranteed by the Constitution or

---

[1] Id. at 327.

federal laws. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982).

Here, the plaintiff cannot establish that either Jarvis or Jenkins was a state actor when they assaulted him. Jarvis and Jenkins were not working as employees of the State, or an agency of the State, at the time of the alleged assault. Instead, Jarvis and Jenkins were other inmates at the jail where the plaintiff was housed. Accordingly, Jarvis and Jenkins should be dismissed as defendants in this action.

Moreover, the plaintiff cannot show that Prime Care Medical is a "person" for purposes of § 1983. Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Like a jail or correctional authority, Prime Care Medical is not a "person" for purposes of § 1983. Prime Care Medical is the company contracted by the West Virginia Regional Jail Authority to provide medical care to its inmates. Thus, the plaintiff fails to state a claim against Prime Care Medical and that defendant should be dismissed from this action.

**B.  Defendant Rudloff**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by

5

each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff does not allege any allegations against defendant Rudloff,[2] let alone, any allegations that defendant Rudloff was personally involved in any violation of the plaintiff's constitutional rights. Rather, it appears that the plaintiff merely names Rudloff in his official capacity as the Administrator of the Eastern Regional Jail. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

---

[2] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

It is possible, however, that the plaintiff also attempts to name Rudloff in his supervisory capacity. All the same, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[3]

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against defendant Rudloff and he cannot maintain an action against that defendant. Thus, defendant Rudloff

---

[3] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

should be dismissed as a defendant in this action.[4]

## C. Defendants Brown and Chad

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

---

[4] To the extent the plaintiff asserts that defendant Rudloff was deliberately indifferent to his serious medical needs by denying his administrative grievances, or by failing to respond to such grievances, that claim is also without merit as this is not the type of personal involvement required to state a claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." <u>Id.</u> at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." <u>See</u> <u>Morales Feliciano v. Calderon Serra</u>, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003)).

Upon due consideration of the claims alleged in the complaint, the undersigned is of the opinion that the plaintiff's claims against defendants Brown and Chad should not be summarily dismissed at this time. Instead, the undersigned believes that defendants Brown and Chad should be made to answer the complaint.

### IV. <u>Recommendation</u>

For the reasons set forth herein, the undersigned recommends:

(1) the plaintiff's claims against defendants Jarvis, Jenkins, Prime Care Medical and Rudloff

be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915A and 1915(e) for the failure to state a claim for which relief may be granted; and

(2) the plaintiff's claims against defendants Brown and Chad **PROCEED**, and those defendants be **SERVED** with a copy of a twenty (20) day summons and the complaint through the United States Marshal Service.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: February 27, 2009.

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE