IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DALE ANTHONY SHOOP,**

      **Plaintiff,**

**v.**                                                                     **Civil Action No. 5:08cv188**
                                                                          **(Judge Stamp)**

**GREGORY JENKINS, JESSE JARVIS,**
**JOSHUA BROWN, MR. RUDLOFF,**
**CHAD T. HOTT AND PRIME CARE MED.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action against the above-named defendants on December 29, 2008. (Dckt 1). By Order entered April 1, 2009, the plaintiff's claims against Gregory Jenkins, Jesse Jarvis, Mr. Rudloff and Prime Care Medical were dismissed with prejudice and the remaining defendants were directed to answer the complaint. (Dckt. 18).

On April 29, 2009, defendant Joshua Brown ("Brown") filed a motion to dismiss the complaint. (Dckt. 21). Defendant Chad Hott ("Hott") filed a similar motion on May 12, 2009, as well as an Answer to the complaint. (Dckt. 28 & 29). Because the plaintiff is proceeding *pro se*, a Roseboro Notice issued after the filing of each of the defendants' motions. (Dckt. 23 & 31).

On June 4, 2009, the plaintiff filed a response to defendant Brown's motion. (Dckt. 34). The plaintiff filed a response to defendant Hott's motion on June 24, 2009. Accordingly, this case is ripe for review.

### II. Contentions of the Parties

## A. The Complaint

In the complaint, the plaintiff asserts that on September 2, 2007, he was assaulted by three other inmates, including Jesse Jarvis ("Jarvis") and Gregory Jenkins ("Jenkins"). After the assault, the plaintiff "got on the call box" and contacted the guards. Correction Officer Brown was on duty in the tower and took the plaintiff's call. The plaintiff informed Brown that he had been assaulted, that he was injured and in severe pain, and that he was bleeding from his head. Brown told the plaintiff that he was sending guards to the plaintiff's cell. Brown also asked the plaintiff if he knew who assaulted him and the plaintiff stated that he did.

The plaintiff waited for the guards to arrive. When no one showed up after about ten minutes, the plaintiff "got back on the call box" and again spoke with Brown. The plaintiff again explained that he was bleeding from his head and was in severe pain. Brown told the plaintiff that there were guards on the way to help him. Somewhere between 20 and 30 minutes later, Correction Officer Welker ("Welker") responded to the plaintiff's unit to assist him. The plaintiff explained what had happened to him and asked Welker what had taken him so long to get there. Welker told the plaintiff that he had come as soon as Brown reported the need for assistance. Welker then helped the plaintiff to the medical unit.

Once in the medical unit, the plaintiff was examined by Nurse Darlin and Nurse April. During his examination, the nurses discovered what appeared to be stab or puncture wounds behind the plaintiff's left ear. The plaintiff was wrapped with gauze and sent to the city hospital. At the hospital, the plaintiff was examined by a doctor, x-rayed and pictures were taken of his injuries. As a result of the plaintiff's x-rays, the doctor determined that the plaintiff had a crack in the lower right side of his back. Therefore, the plaintiff was advised that upon his return to the jail, he should stay

in the medical department for observation and that he should be kept on a bunk. The plaintiff was then taken back to the Eastern Regional Jail.

Upon his return to the jail, the plaintiff was taken to the medical department and assigned to a medical cell. However, the cell was a one man cell that already housed another inmate. Therefore, the plaintiff was told to sleep on the floor. The plaintiff complained to the Medical Director, Hott, but was told that nothing could be done. The plaintiff was told that the jail was overcrowded and they had no bunk within which to place him. The plaintiff explained the doctor's instructions, but was told that Hott ran the medical unit, not the doctor from the hospital. Eventually, the plaintiff was given Motrin for pain.

The plaintiff then told Corporal Wilson ("Wilson") that he wanted to press charges against the inmates who had assaulted him. Thus, the plaintiff asked Wilson to contact the Sheriff's Department. The plaintiff asserts that the Sheriff's Department was never contacted, so three days later, when he was able to speak to his family, he asked them to call the Sheriff's Department. The plaintiff's mother did so and a deputy came to the jail and took a report. Battery charges were filed against Jarvis and Jenkins, to which they both pled and received sentences of time served.

As a result of the above-described incidents, the plaintiff asserts that his constitutional rights were violated by Brown when he failed to respond expediently to the plaintiff's claim for assistance. In support of this claim, the plaintiff asserts that Brown neglected to summon help immediately even after being told that the plaintiff had been severely injured in an assault. In addition, the plaintiff asserts that Hott violated his rights because he had the plaintiff sleep on the floor in direct contradiction to the instructions of the doctor from the hospital.

**B.  Defendant Brown's Motion**

In his motion, defendant Brown seeks the dismissal of the plaintiff's complaint against him for the following reasons:

(1) failure to exhaust administrative remedies; and

(2) Eleventh Amendment Immunity and the Will Doctrine.

## C. **Defendant Hott's Motion**

In his motion, defendant Hott seeks the dismissal of the plaintiff's complaint against him for the following reason:

(1) failure to exhaust administrative remedies.

## D. **The Plaintiff's Replies**

In his reply to defendant Brown's motion, the plaintiff asserts that he did exhaust his administrative remedies. In particular, the plaintiff asserts that he filed an administrative remedy on September 4, 2007. Reply (Dckt. 34) at 2. In that remedy, the plaintiff alleged that he was assaulted by other inmates on September 2, 2007. Complaint (Dckt. 1) at Ex. 2. In addition, the plaintiff alleged that he immediately reported the incident to Brown, and told Brown that he was seriously injured, but that Brown failed to timely respond. *Id.* The plaintiff asserts that he never received a response to his grievance. *Id.* Therefore, on September 21, 2007, the plaintiff sent a request to staff which sought resolution of his September 4th grievance. *Id.* at Ex. 3. The plaintiff asserts that he received no response. *Id.*

On July 17, 2008, in an apparent attempt to compile the necessary records to file this suit, the plaintiff sent another request to staff seeking resolution of the September 4th grievance. *Id.* at Ex. 4. Specifically, the plaintiff requested a grievance hearing and advised the Administrator that if he did not receive a response he would file an appeal to the Chief of Operations. *Id.* The plaintiff

was told that staff was unaware of the September 4th grievance and that if he provided a copy, staff would address the situation. *Id.* Although the plaintiff gave a copy of the original grievance to Lt. Bittinger, the plaintiff asserts that he heard nothing further. Reply (dckt. 34) at 2. Thus, the plaintiff asserts that he considers his administrative remedies exhausted. *Id.*

In response to defendant Hott's motion, the plaintiff asserts that he utilized the administrative remedies that were available to him concerning his claims against Hott, and that he therefore, satisfies the exhaustion requirement of 42 U.S.C. § 1997(e). Reply (dckt. 36) at 2-3. Specifically, the plaintiff asserts that the West Virginia Regional Jail Authority has a grievance procedure in theory, but not in practice. *Id.* at 4. For example, the plaintiff asserts that there is no one available to assist an inmate with the grievance procedure, and in fact, the Regional Jail Authority does not even have grievance forms. *Id.* Instead, according to the plaintiff, the Regional Jail Authority requires an inmate to merely send a "request to staff." *Id.* That way, the plaintiff alleges, staff is free to not respond. *Id.* Moreover, the plaintiff asserts that when staff does respond to a request, they frequently fail to comply with the procedure. *Id.*

In this case, the plaintiff asserts that he requested the necessary forms to file a grievance against defendant Hott. Reply (Dckt. 36), Declaration of Dale Anthony Shoop. However, the plaintiff asserts that he was never supplied the necessary forms. *Id.* Thus, the plaintiff implies that the Court should consider his available remedies exhausted, or waive the exhaustion requirement, because his ability to properly exhaust was impeded by staff.

5

### III. Standard of Review

#### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

#### B. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001).

The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See

---

[1] Porter v. Nussle, 534 U.S. 516, 524 (2002).

Porter v. Nussle, 534 U.S. at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read *futility* or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6 (emphasis added).

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision.

Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations'

response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

1. Plaintiffs' Claims Against Defendant Brown

With regard to the plaintiff's claims against defendant Brown, it is clear that the plaintiff initiated the grievance procedure by filing the September 4, 2007, grievance. In fact, the plaintiff followed up on that grievance on at least two subsequent occasions. However, after receiving no response to the original grievance, or his follow up requests, the plaintiff simply stopped trying. He made no attempt to file a grievance with the Chief of Operations or the Executive Director. However, the plaintiff clearly understood that he had a duty to do so.[2] In his September 21, 2007 request to staff, the plaintiff advised that if he received no response he would be forced to continue the process by filing a grievance with the Chief of Operations. Accordingly, because the petitioner did not meet all the procedural requirements of the Regional Jail system's administrative remedy program, the plaintiff did not fully and properly exhaust his exhaustion requirement under the PLRA. See Woodford v. Ngo, 548 U.S. 81, 93 (2006). Thus, the plaintiff's claims against

---

[2] The West Virginia Regional Jail Authority's grievance procedure specifically allows for an inmate to proceed to the next level of the process if he does not receive a timely response. Thus, staff's failure to respond to the plaintiff's September 4, 2007 grievance did not prevent him from pursuing his remaining remedies.

defendant Brown must be dismissed for the failure to exhaust administrative remedies.

   2. Plaintiffs' Claims Against Defendant Hott

With regard to the plaintiff's claims against defendant Hott, the plaintiff concedes that he never even initiated the grievance procedure. However, the plaintiff asserts that because he was prevented from doing so, his claims should be heard on the merits.

It has been recognized that a prison's administrative remedies can be rendered "unavailable" for purposes of exhaustion when officials refuse to provide an inmate with required grievance forms. See Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (vacating a grant of summary judgment on exhaustion grounds where the defendants failed to supply any reason for the plaintiff being refused the necessary forms); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (finding district court erred by not addressing plaintiffs' claims that prison officials failed to provide him with appropriate grievance forms); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (exhaustion requirement may be satisfied where prisoner raises allegations that prison officials failed to provide him with the necessary grievance forms); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). Moreover, other courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable).

In this case, the plaintiff has submitted a declaration, given under penalty of perjury, that

10

states he asked staff for grievance forms, but that they refused. See Reply (Dckt. 36), Declaration of Dale Anthony Shoop. On the other hand, defendant Hott relies upon the Affidavit of John King which states that the plaintiff did not file grievances to the Chief of Operations or the Executive Director. However, the plaintiff concedes as much in his reply. Defendant Hott has not addressed the plaintiff's claim that he was prevented from filing a grievance because he was refused the appropriate forms. Accordingly, there remains a genuine issue of fact with regard to whether the plaintiff has exhausted his claims against defendant Hott. For that reason, summary dismissal of the plaintiff's claims against defendant Hott for the failure to exhaust is not appropriate at this time.

## V. Recommendation

In consideration of the foregoing, the undersigned makes the following recommendations:

(1) defendant Brown's Motion to Dismiss (dckt. 21) be **GRANTED** and defendant Brown be **DISMISSED without prejudice** for the plaintiff's failure to properly exhaust administrative remedies against that defendant; and

(2) defendant Hott's Motion to Dismiss (dckt. 29) be **DENIED** and the Court issue a scheduling Order as to the plaintiff's claims against defendant Hott.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d

91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 1, 2009.

/s/ David J. Joel
_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE