# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DALE ANTHONY SHOOP,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　**Civil Action No. 5:08cv188**
　　　　　　　　　　　　　　　　　　　　　　**(Judge Stamp)**

**CHAD T. HOTT,**

    **Defendant.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on December 29, 2008. In the complaint, the plaintiff sought relief against Gregory Jenkins ("Jenkins"), Jesse Jarvis ("Jarvis"), Joshua Brown ("Brown"), Mr. Rudloff ("Rudloff"), Chad Hott ("Hott") and PrimeCare Medical. After a preliminary review of the complaint, the undersigned recommended that defendants Jenkins, Jarvis, Rudloff and PrimeCare Medical be dismissed with prejudice, but that the plaintiff's claims against Brown and Hott proceed. The Report and Recommendation ("R&R") was adopted in its entirety by the district judge on April 1, 2009, and Brown and Hott were subsequently directed to file an answer to the complaint.

On April 29, 2009, Brown filed a motion to dismiss the complaint for failure to exhaust. On May 12, 2009, Hott filed a similar motion and an Answer to the complaint. The plaintiff filed a response to Brown's motion on June 4, 2009, and to Hott's motion on June 24, 2009. On July 1, 2009, the undersigned issued a second R&R recommending that Brown's motion be granted, but that Hott's motion be denied. The second R&R was adopted by the district judge in its entirety on January 8, 2010, and defendant Brown was dismissed without prejudice from this case. A

scheduling Order issued as to defendant Hott on January 12, 2010.

On February 1, 2010, Hott filed a Second Motion to Dismiss and Alternative Motion for Summary Judgment. Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro Notice on February 8, 2010. After extending the plaintiff's response time, the plaintiff filed a response to Hott's motion on March 24, 2010. This case is before the undersigned for a R&R on defendant Hott's pending motion.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that on September 2, 2007, he was assaulted by three other inmates while incarcerated at the Eastern Regional Jail. As a result of the injuries he sustained, the plaintiff was examined by the jail's medical staff and sent to an outside hospital. At the hospital, the plaintiff was examined by a doctor, x-rayed and pictures were taken of his injuries. The plaintiff was diagnosed with a crack in the lower right side of his back and possible head injuries. Therefore, it was recommended that the plaintiff stay in the medical department for observation upon his return to the jail. Bed rest and limited activity were also recommended. The plaintiff returned to the Eastern Regional Jail later that same day.

Upon his return, the plaintiff was taken to the medical department and assigned to a medical cell. The cell was a one man cell that already housed another inmate. Thus, the plaintiff was given a mattress and told to sleep on the floor. The plaintiff complained to Hott, the Medical Director, about sleeping on the floor, but was told that nothing could be done. Specifically, Hott told the plaintiff that the jail was overcrowded and there were no bunks available. The plaintiff informed Hott that the doctor had advised him to rest in a bed. Nonetheless, Hott told the plaintiff that he (Hott) ran the medical unit, not the doctor from the hospital. The plaintiff remained on the floor in

the medical unit and was not assigned a bunk. The plaintiff asserts that Hott violated his constitutional rights by making him sleep on the floor rather than in a bunk as directed by the doctor from the hospital.

**B.** **Hott's Second Motion to Dismiss and Alternative Motion for Summary Judgment**

In his motion, the defendant asserts that the only allegation the plaintiff specifically makes against him in the complaint is:

> I spoke to Medical Director Chad who stated there was nothing he could do that the jail is overcrowded and they have no bunks for me. I stated the Doctor said I was to be on a bunk and he stated he runs this Medical not him. I was given [M]otrin for pain.

Memorandum (dckt. 52) at 2 (quoting Complaint (dckt. 1), § IV Statement of Claim, p.10).

Additionally, Hott asserts the following facts regarding his employment with PrimeCare Medical:

(1) Since 2000, he has been employed as a health care provider by PrimeCare Medical at various regional jails in northern West Virginia, including the Eastern Regional Jail.

(2) He is a registered professional nurse and has held the position of Regional Coordinator for PrimeCare Medical since October 2003.

(3) As the Regional Coordinator, he supervises the Health Services Administrators and their nursing staffs in the medical units of the regional jails in northern West Virginia.

(4) Between August 2007 and October 2007, he served as an interim Health Services Administrator "HSA")at the Eastern Regional Jail because of a temporary vacancy.

(5) As the interim HSA, he was responsible for overseeing the delivery of health care to the inmates on a daily basis as well as various other administrative duties.

Motion (dckt. 51) at Ex. 1 (Affidavit of Chad Hott).

As to the particular allegations made by the plaintiff, Hott asserts that he was not working on Sunday, September 2, 2007, the date the plaintiff was taken to and returned from the outside hospital after he was injured in an altercation with other inmates. He also concedes that the discharge papers from the hospital reflect that bed rest and limited activity were recommended for the plaintiff's fracture and as a head injury precaution. Hott further agrees that upon the plaintiff's return to the Eastern Regional Jail, the plaintiff was assigned a cell in the medical unit. However, because all of the bunks were occupied at that time, the plaintiff was given a mattress and directed to sleep on the floor of the cell.

Hott also asserts that the beds in the medical unit are not like conventional beds. Instead, they are solid, flat metal plates supported by metal legs and covered by a mattress. They have no springs. Hott therefore contends that sleeping on a mattress on the concrete cell floor is more or less equivalent to sleeping on one of the metal beds. Moreover, Hott asserts that it is only on rare occasions that actual beds are used in the medical unit, although hospital beds may be ordered by physician or mid-level practioner for inmate-patients that are either terminally ill or paralyzed. Their use must also be approved by a physician at the corporate headquarters of PrimeCare. Thus, Hott asserts that neither in his capacity as the interim HSA in September 2007, nor in his capacity as the Regional Coordinator, did he have the authority to order the plaintiff, or any other inmate, a bed.

As to any discussions with the plaintiff regarding his sleeping arrangements, Hott asserts that he has no recollection any such conversations. Hott asserts that it is his practice to document any medical discussion with an inmate in the inmate's medical chart. There is no such discussion documented in the plaintiff's medical chart. Nonetheless, Hott concedes that if such conversation had taken place, he would have told the plaintiff that there was nothing he could do about the

4

sleeping arrangements and to speak with a physician or mid-level practioner acquiring a bed.

Finally, Hott denies that he was deliberately indifferent to the plaintiff's medical needs on or about September 2, 2007. He also notes that the plaintiff's medical records show that the nurses who observed the plaintiff in the medical unit during this time period documented that he appeared to be sleeping comfortably and ambulating without difficulty. Hott asserts that the plaintiff has simply misinterpreted the discharge instructions of the physician at the hospital, and specifically, the term "bed rest." Therefore, Hott asserts that the plaintiff has failed to allege any facts which could establish a violation of the plaintiff's constitutional rights, and even if the plaintiff could establish such a violation, Hott contends he is entitled to qualified immunity.

## C. The Plaintiff's Response

In his response, the plaintiff first asserts that defendant Hott's second motion to dismiss, entered after a responsive pleading had been filed, is improper. Next, he contends that, although not specifically stated, in its prior Orders, the Court has already found his allegations sufficient to state a claim. Therefore, the plaintiff asserts that Hott's second motion to dismiss should be denied.[1]

Second, the plaintiff contends that accepting his well-pleaded allegations as true, the emergency room physician who treated him instructed that he be housed in the jail's medical unit upon his return to the facility. In addition, the plaintiff asserts that the doctor instructed that he be kept in a bunk and not on the floor, due to the severity of his injury. However, the plaintiff asserts that the undisputed facts show that after he was returned to the Eastern Regional Jail, he was forced to sleep on a thin mat on the cold, hard concrete floor. The plaintiff points out that Hott has

---

[1]Because the defendant's motion is accompanied by affidavits, exhibits and other documents, the motion to dismiss is construed as a motion for summary judgment. See § III Standard of Review, *infra*. Thus, the plaintiff's allegations with respect to the motion to dismiss are moot.

conceded that he did not receive his bed rest on a conventional bed and argues that Hott could have initiated the process of having a conventional bed made available for his use.

The plaintiff asserts that he has established that Hott was deliberately indifferent to his serious medical needs by intentionally ignoring the instructions of the treating physician and that Hott is not entitled to qualified immunity. In fact, the plaintiff asserts that Hott's judgment to leave him on the floor with severe injuries was so egregious that it was not medical treatment at all. The plaintiff asserts that issues of fact remain which preclude a grant of summary judgment and seeks the denial of Hott's motion.

### III. Standard of Review

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

When a motion to dismiss is accompanied by affidavits, exhibits and other documents, the motion will be construed as a motion for summary judgment. Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party is required "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 322.

When a moving party supports its Rule 56 motion with affidavits and other materials, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).

### IV.  Analysis

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d at 851. A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See

Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The following material facts are not in dispute:

(1) the plaintiff was involved in an altercation with other inmates on or about September 2, 2007;

(2) as a result of the altercation, the plaintiff was injured and taken to an outside hospital;

(3) the plaintiff was diagnosed with a fracture and possible head injury, thus, the treating physician released him back to the facility with a recommendation that the plaintiff be returned to the facility's medical unit for observation and bed rest with limited activity;

(4) on September 2, 2007, defendant Hott was employed as the Regional Coordinator for PrimeCare Medical and was acting as the interim HSA at the Eastern Regional Jail due to a vacancy;

(5) defendant Hott was not on duty on September 2, 2007;

(6) when the plaintiff was returned to the Eastern Regional Jail, he was assigned to the medical unit;

(7) due to overcrowding, the plaintiff was placed in an occupied one man medical cell and was compelled to sleep on a mattress on the floor;

(8) although he was placed on a mattress on the floor, the plaintiff appeared to sleep comfortably and ambulate well;

(9) the bunks in the medical unit are flat metal plates supported by metal legs and covered with a mattress;

(10) the Eastern Regional Jail does not have conventional beds and hospital beds are only provided in certain medical situations;

(11) sleeping on the concrete floor on a mattress is the functional equivalent to sleeping on a bunk; and

(12) only a physician or mid-level practioner may request a hospital bed for an inmate and that request must then be approved by a physician at PrimeCare Medical's corporate headquarters.

It is clear from the undisputed facts, that the plaintiff cannot establish a violation of his constitutional rights and summary judgment is appropriate for defendant Hott. To show that the defendant was deliberate indifferent to his serious medical needs, the plaintiff must show that he suffered a serious injury and that Hott knew of and disregarded a substantial risk of harm to the plaintiff.

Here, the defendants do not dispute that the plaintiff suffered a serious medical injury, even though the diagnosis from the treating physician does not indicate that the plaintiff's injury was serious. For purposes of this Order, however, the undersigned will assume that the plaintiff's injury is sufficiently serious to meet the first prong of the test for deliberate indifference. Nonetheless, even assuming that the plaintiff's injury was serious, there is no evidence that Hott had a sufficiently culpable state of mind under prong two of the test for deliberate indifference. The pertinent discharge instructions from the treating physician at the outside hospital were:

> You have a fracture in your back, called a 'transverse process' fracture. This is part of your vertebra. The transverse process sticks out to the side of the vertebra. Muscles attach to it, allowing you to tip your back from side to side. The fracture is usually caused by a blow to the back.
> *Although painful, the fracture is not serious.* There is no risk of paralysis. You can expect to recover fully within a few weeks.
> The treatment of this fracture is essentially the same as for a severe back strain. Muscle relaxers or antiinflammatory (sic) medication may be prescribed. You should *rest in bed* for a few days until the pain eases, then begin light activity. A recheck will determine when you are ready to resume work or sports.

> Ice pack the painful area at first. After you are active again, you can apply gentle heat intermittently to relax sore muscles. You can continue with ice packs if you find them helpful in reducing muscle pain.
> Call the doctor or return at once if you develop radiating pains, muscle weakness, blood in the urine, problems with the bladder or bowels, or numbness.
>
> ********
>
> At this point, *there is no evidence that your head injury is serious*. Observation is necessary, however.
> Take only clear liquids for the first eight to 24 hours, unless told otherwise by the doctor. If no pain medication was prescribed, you may take acetaminophen according to the directions on the bottle. Do no take any medication that may alter your level of alertness (unless you've discussed it with the doctor first).
> Limit activity for the first 24 hours. *Bed rest is best*. Several times during the first 24 hours, check to see if the pupils are equal in size and that the patient is easily arousable and responds normally.
> Contact your doctor or go to the hospital if any of the following things occur: Persistent or projectile vomiting, unequal pupil size, difficulty in arousing the patient, worsening or continued headache, or failure to improve as expected.

Motion (dckt. 51), Ex. A at Att. 1 (emphasis added).

Despite what the plaintiff may contend, the treating physician did not specifically recommend that the plaintiff rest in an actual bed. He recommended that the plaintiff recuperate with bed rest. Although the plaintiff argues semantics, the Court is unpersuaded by that argument. Bed rest is a common medical recommendation and generally means rest with limited activity. It does not require that such rest actually be in a bed. It could be in a bed, on a chair, on a couch, or even on a mattress of the floor.

Additionally, the undisputed facts show that even if the treating physician intended the plaintiff to rest in a conventional bed or hospital bed, the Eastern Regional Jail has neither, and Hott did not have the authority to request one for the plaintiff as he is not a physician nor mid-level practioner. Likewise, even if the physician intended the plaintiff to rest on a jail bunk, the

11

undisputed facts show that a mattress on the concrete floor of the cell is the functional equivalent to a mattress on a hard, metal bunk. Nevertheless, whatever the recommendation of the hospital physician, his treatment plan was merely a recommendation. The medical staff at the Eastern Regional Jail was not required to blindly follow that plan, especially if it did not conform to jail policy or was contrary to their own reasoned medical judgment.

Finally, the undisputed facts also show that the plaintiff slept on a mattress on the floor due to an overcrowding problem at the Eastern Regional Jail. There is nothing in the record to show that the plaintiff slept on the floor for any other reason. Overcrowding is simply not an issue that is within the purview of the jail's medical director. Such an issue must be addressed by the facility's administrator and the appropriate executives of the West Virginia Regional Jail Authority. Consequently, the plaintiff cannot show that Hott had the requisite state of mind to form the subjective basis for a claim of deliberate indifference.

Accordingly, there are no genuine issues of material fact in dispute which could establish that Hott was deliberately indifferent to the plaintiff's serious medical needs.

## V. Recommendation

For the reasons stated, the undersigned recommends that defendant Hott's Second Motion to Dismiss Complaint and Alternative Motion for Summary Judgment (dckt. 51) be construed as a motion for summary judgment and **GRANTED**, that defendant Hott be **DISMISSED with prejudice** from this case, and that the case be **CLOSED** and **STRICKEN** from the Court's active docket.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A

copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, *supra*; United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 30, 2010.

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE