IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DALE ANTHONY SHOOP,

        Plaintiff,

v.                                                         Civil Action No. 5:08cv188
                                                         (Judge Stamp)

**CHAD T. HOTT,**

        Defendant.

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on December 29, 2008. In his complaint, the plaintiff sought relief against Gregory Jenkins ("Jenkins"), Jesse Jarvis ("Jarvis"), Joshua Brown ("Brown"), Mr. Rudloff ("Rudloff"), Chad Hott ("Hott") and PrimeCare Medical. After a preliminary review of the complaint, the undersigned recommended that defendants Jenkins, Jarvis, Rudloff and PrimeCare Medical be dismissed with prejudice, but that the plaintiff's claims against Brown and Hott proceed. (Dckt.# 14) The Report and Recommendation ("R&R") was adopted in its entirety by the district judge on April 1, 2009, and Brown and Hott were subsequently directed to file an answer to the complaint. (Dckt.# 18)

On April 29, 2009, Brown filed a motion to dismiss the complaint for failure to exhaust. (Dckt.# 21) On May 12, 2009, Hott filed a similar motion and an answer to the complaint. (Dckts.# 28, 29) The plaintiff filed a response to Brown's motion on June 4, 2009, and to Hott's motion on June 24, 2009. (Dckts.# 34, 36) On July 1, 2009, the undersigned issued a second R&R recommending that Brown's motion be granted, but that Hott's motion be denied. (Dckt. 38) The second R&R was adopted by the district judge in its entirety on January 8, 2010, and defendant

Brown was dismissed without prejudice from the case. (Dckt.# 47)

A scheduling order issued as to defendant Hott on January 12, 2012. (Dckt.# 48). Pursuant to the scheduling order, the parties had 120 days to complete discovery. In addition, the parties had 150 days to file dispositive motions as well as supporting deposition transcripts, admissions, documents, affidavits, and the like.

On February 1, 2010, Hott filed a second motion to dismiss and alternative motion for summary judgment. (Dckt.# 51) A <u>Roseboro</u> Notice was issued on February 8, 2010. (Dckt.# 53) After receiving an extension of time, the plaintiff filed a response to Hott's motion on March 24, 2010. (Dckt.# 61) On March 30, 2010, the undersigned issued a R&R recommending that Hott's motion be granted. (Dckt.# 62) On July 27, 2010, the district judge entered a Memorandum Opinion and Order declining to adopt the R&R and ordering the case to proceed. In declining to adopt the R&R, the district judge noted that Hott filed his motion to dismiss complaint and alternative motion for summary judgment several months before the discovery deadline of May 12, 2010. Moreover, the district judge found that the R&R was entered with approximately a month and a half left for the completion of discovery. Finding that summary judgment should only be granted after adequate time for discovery, the district judge concluded that Hott's motion to dismiss complaint and alternative motion for summary judgment was premature when filed and should not have been granted prior to the completion of discovery. (Dckt.# 81)

Following entry of the district judge's Memorandum and Opinion, an Order and Notice resetting discovery and scheduling was entered on July 29, 2010. (Dckt.# 82) Pursuant to that order, discovery was to be fully served and completed within 120 days. Dispositive motions, as well as deposition transcripts, admissions, documents, affidavits, and any other such matters in support

thereof were to be filed within 150 days.

On October 27, 2011, Hott filed a third motion for summary judgment. (Dckt.# 128) Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro Notice on November 1, 2011. (Dckt.# 132) On November 28, 2011, the plaintiff requested an enlargement of time, which was granted, and he was given until December 30, 2011 to file his response. On January 9, 2012, the plaintiff filed his response. (Dckt.# 136) On January 26, 2012, the plaintiff filed a Letter/Motion for a Temporary Injunction and Stay. (Dckt.# 137) This case is before the undersigned for a R&R on the pending motions.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that on September 2, 2007, he was assaulted by three other inmates while incarcerated at the Eastern Regional Jail. As the result of the injuries he received, the plaintiff was examined by the jail's medical staff and sent to an outside hospital. At the hospital, the plaintiff was examined by a doctor, x-rayed and pictures were taken of his injuries. The plaintiff alleges that he was diagnosed with a "crack in his lower right side of my back." (Dckt.# 1, p. 4). The plaintiff also alleges that he was diagnosed with possible head injuries. The plaintiff further alleges that the doctor at the hospital told him that when he returned to the jail, he should stay in the Medical Department and be kept in a bunk not on the floor due to the severity of his injury.

The plaintiff continues that when he was returned to the jail, he was taken to the medical department and assigned to a medical cell. The cell was a one man cell that already housed another inmate. Therefore, he maintains that he was given a mattress and told to sleep on the floor. The plaintiff alleges that he complained to Hott, the medical director, about sleeping on the floor but was

3

told that nothing could be done. More specifically, the plaintiff alleges that Hott told him that the jail was overcrowded and that there were no bunks available. The plaintiff maintains that he informed Hott that the doctor had advised him to rest in a bed. The plaintiff contends that Hott responded by telling him that he (Hott) ran the medical unit, not the doctor from the hospital. The plaintiff contends that he remained in the medical unit and was not assigned a bunk. He asserts that Hott violated his constitutional rights by making him sleep on the floor rather than in a bunk as directed by the doctor from the hospital. For relief, the plaintiff seeks $1,000,000.00 for punitive damages, negligence, malice, liability and deliberate indifference. In addition, he seeks a court order for medical treatment and monitoring of his injury with adequate and sufficient relief for ongoing pain and suffering due the a permanent injury to his back.

**B. Hott's Third Motion To Dismiss**

In support of his third motion to dismiss, Hott contends that:

1. The plaintiff's claim neither plead, nor meets the legal threshold for a viable Eighth Amendment/Fourteenth Amendment claim; and

2. He (Hott) is entitled to qualified immunity.

**C. Plaintiff's Reply**

In reply, the plaintiff notes that pursuant to 95 C.S.R. 8.9(d), as a pre-trial detainee he was entitled to a "bed above floor level..." Accordingly, the plaintiff requests that the Court find that among the undisputed facts are his statutory right to a bed above floor level. Moreover, the plaintiff cites a number of cases for the proposition that federal courts have condemned the practice of forcing pre-trial detainees to sleep on the floor. The plaintiff maintains that this Court must determine whether 95 C.S.R. Title 1 gave Hott fair warning that his conduct in continuing his assignment to a floor mattress after becoming aware of the situation violated state and federal law. Additionally,

the plaintiff argues that Dr. Jerry Hahn, M.D., the individual Hott identified who supervised or administered the provisions of emergency and on-going medical care at the ERJ, did not revoke the discharge instructions for bed rest. The plaintiff also argues that his claim exceeds the threshold for a viable Fourteenth Amendment Claim. Finally, with respect to the assertion of qualified immunity, the plaintiff argues that Hott violated his clearly established statutory rights enacted by the W.Va. Legislature, 95 C.S.R. Series 1, and plaintiff's clearly established constitutional rights as detailed in prior federal court decisions. Moreover, the plaintiff argues that qualified immunity does not protect private parties who act under color of state law. The plaintiff expands on this argument by noting that the W.Va. Legislature specified that "the sovereign immunity of the State shall not extent [sic] to the contractor or its insurer." (Dckt.# 136, p. 9 citing W.Va.Code, § 25-3-3(c)(4))

### III. Standard of Review

**A. Motion for Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.

5

Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### IV. Analysis

At the time of the events giving rise to this complaint, the plaintiff was a pretrial detainee. Confinement conditions of state pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (19679). However, the analysis under the Due Process Clause is very similar to the analysis under the Eighth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997) (en banc); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992); Marshall v. Abbasi, 109 F. App'x 609, 610 n.2 (4th Cir. 2004) (per curiam)

6

(unpublished) ("With respect to claims of deliberate indifference to medical needs, a pretrial detainee's due process rights are coextensive with a convicted prisoner's Eighth Amendment rights.").

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that Hott acted with deliberate indifference to his serious medical needs. Estelle v.Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[1]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kan. 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F.3d 101 (4th Cir. 1995). A detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F. Supp. 2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The following facts do not appear to be in dispute:

(1) the plaintiff was involved in an altercation with other inmates on or about September 2, 2007;

(2) as a result of the altercation, the plaintiff was injured and taken to an outside hospital;

(3) the plaintiff was diagnosed with a fracture and possible head injury, thus the treating physician released him back to the facility with a recommendation that the plaintiff be returned to the facility's medical unit for observation and bed rest with limited

activity;

(4) on September 2, 2007, Hott was employed as the Regional Coordinator for PrimeCare Medical and was acting as the interim HSA at the Eastern Regional Jail due to a vacancy;

(5) Hott was not on duty on September 2, 2007;

(6) when the plaintiff was returned to the ERJ, he was assigned to the medical unit;

(7) due to overcrowding, the plaintiff was placed in an occupied one man medical cell and required to sleep on a mattress on the floor;

(8) although he was placed on a mattress on the floor, the plaintiff appeared to sleep comfortably and ambulate well;

(9) the bunks in the medical unit are flat metal plates supported by metal legs and covered with a mattress;

(10) the ERJ does not have conventional beds and hospital beds are only provided in certain medical situations;

(11) sleeping on the concrete floor on a mattress is the functional equivalent to sleeping on a hospital bunk;

(12) only a physician or mid-level practitioner may request a hospital bed for an inmate and that request must then be approved by a physician at PrimeCare Medical's corporate headquarters;

(13) The policy of the Jail and Correctional Facility Standards Commission establish that all rooms or cells shall have a bed above floor level....

In this particular case the defendant does not concede that the plaintiff suffered a serious medical injury that would trigger the prohibition against deliberate indifference to such a condition. Reviewing the discharge instructions of the treating emergency physician, which are quoted below, would indicate that the plaintiff did not, in fact, suffer a serious medical injury. However, even if the court were inclined to assume that the plaintiff's injury was sufficiently serious to meet the first prong of the test for deliberate indifference, the plaintiff fails to demonstrate the second, or subjective prong.

The pertinent discharge instructions from the emergency room at the outside hospital were:

9

> You have a fracture in your back, called a 'transverse process' fracture. This is part of your vertebra. The transverse process sticks out to the side of the vertebra. Muscle attach to it, allowing you to tip your back from side to side. The fracture is usually caused by a blow to the back. **Although painful, the fracture is not serious**. There is no risk of paralysis. You can expect to recover fully within a few weeks.
> The treatment of this fracture is essentially the same for a severe back strain. Muscle relaxers or antiinflammatory [sic] medications may be prescribed. You should rest in bed for a few days until the pain eases, then begin light activity. A recheck will determine when you are ready to resume work or sports.
>
> *********
>
> At this point, **there is no evidence that your head injury is serious.** Observation is necessary, however.
> Take only clear liquids for the first eight to 24 hours, unless told otherwise by a doctor. If no pain medication was prescribed, you may take acetaminophen according to the directions on the bottle. Do not take any medication that may alter your level of alertness (unless you have discussed it with the doctor first).
> Limit activity for the first 24 hors. Bed rest is best. Several times during the first 24 hours, check to see if the pupils are equal in size and that the patient is easily arousable and responds normally.
> Contact your doctor or go to the hospital if any of the following things occur: Persistent or projectile vomiting or continued headache, or failure to improve as expected.

(Dckt.# 128-1, pp. 8-9)(emphasis added).

Although the plaintiff contends that the doctor at the outside facility "ordered" bed rest, said physician did not specifically recommend that the plaintiff rest in an actual bed. He merely recommended that the plaintiff recuperate with bed rest. Although the plaintiff argues semantics, the undersigned is not persuaded. Bed rest is a common medical recommendation that generally means rest with limited activity. It does not necessarily require rest or confinement in an actual bed.

Additionally, the undisputed facts show that even if the physician at the ER intended the plaintiff to rest in a conventional bed or hospital bed, the ERJ has neither, and Hott did not have the authority to request one for the plaintiff as he is neither a physician nor mid-level practitioner.

Likewise, even if the ER physician intended the plaintiff to rest on a jail bunk, the undisputed facts show that a mattress on the concrete floor of the cell is the functional equivalent to a mattress on a hard, metal bunk.

Furthermore, the undisputed facts also show that the plaintiff slept on a mattress on the floor due to an overcrowding problem at the ERJ. There is nothing in the record to show that the plaintiff slept on the floor for any other reason. Overcrowding is not an issue that is within Hott's purview as the jail's medical director. Such an issue would have to be addressed by the facility's administrator and the appropriate executives at the West Virginia Jail Authority. Consequently, the plaintiff cannot show that Hott had the requisite state of mind to form the subjective basis for a claim of deliberate indifference.

Accordingly, there are no genuine issues of material fact in dispute which could establish that Hott was deliberately indifferent to the plaintiff's "serious" medical needs. In reaching this conclusion, the undersigned is mindful that the plaintiff has referenced Title 95 of the Code of State Rules which provides for minimum standards for construction, operation, and maintenance of jails. Contained within Title 95 is the directive that "all rooms or cells shall have access to...a bed above floor level..." §95-1-8 (8.9 d). However, "[a]s the Court pointed out in Smith v. O'Conner, 901 F. Supp. 644, 647-48 (S.D.N.Y.), '[a]n individual's right to have relevant state laws strictly obeyed is not a federal right protected by the Civil Rights Act of 1871 or the Constitution of the United States,' and the mere violation of 'Title 95' or other rules or regulations of the State of West Virginia does not establish a right to relief." Vanhoose v. Ferguson, 2002 WL 32366028, at *2 (S.D. W. Va. Mar. 29, 2002). Moreover, the undersigned is also mindful that the plaintiff has cited a number of cases from various jurisdictions condemning the practice of forcing pre-trial detainees to sleep on the floor. However, the majority of the cases cited by the plaintiff "applied outdated legal standards different from the

11

current 'deliberate indifference' standard for episodic omission by jail officials." Magee v. Crowe, 2010 WL 630011 (E.D. La. February 19, 2010).[2] The more current case is clearly distinguishable.[3] Therefore, the undersigned remains of the opinion that the plaintiff has failed to establish that Hott violated his Fourteenth Amendment rights.

## V. Motion for Temporary Injunction and Stay

On January 26, 2012, the plaintiff filed a Letter Motion seeking a temporary injunction and a "Stay and Abey until such time my due process rights are restored." (Dckt.# 137, p. 1) In his motion, the plaintiff indicates that fellow prisoner Lance Levitt had been helping with preparation of his legal documents along with research until early December 2011. However, the plaintiff maintains that for some reason legal aides are no longer able to help inmates in the "hole." In addition, the plaintiff indicates that he has been placed in the Quality of Life program at MOCC and has no direct access to the law library. However, he notes that he can order 10 "case law cases" three times per week. Based on these assertions, the plaintiff seeks a temporary injunction ordering the Warden to allow legal aide Mr. Levitt to continue working on his case. With respect to the "stay and abey," the plaintiff alleges that he "was not given the proper paper work for filing and due to the dead line I was forced to file a uncomplate [sic] reply because Mr. Levitt was not able to finish what he had started." (Dckt.# 137, p. 2) Although not specifically articulated, it appears that the plaintiff may be requesting that the court suspend further review of the defendant's motion for summary judgment

---

[2]Specifically mentioned as outdated are three cases cited by the plaintiff: Lyons v. Powell, 838 F.2d 28 (1st Cir. 1988); Laureau v. Manson, 651 F.2d 96 (2d Cir. 1981); and Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir. 1989).

[3]In Oladipupo v. Austin, 104 F. Supp. 2d 654 (W.D. La, 2000), the pre-trial detainee had his mattress taken away, and he was forced to sleep on a cold, wet floor. Moreover, other courts have declined to follow its reasoning.

until Mr. Levitt can file an additional or supplemental reply.

The Supreme Court of the United States explained the relevant test for granting a preliminary injunction in Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374-76 (2008). A plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." See also Real Truth About Obama, Inc. v. Federal Elections Comm'n, 575 F.3d 342 (4th Cir. 2009).

Without specifically reviewing the other factors, the plaintiff claims for a preliminary injunction clearly fail to satisfy the first factor because (1) the undersigned has determined that the plaintiff's complaint is due to be dismissed for failure to state a claim . The undersigned can conceive of no additional argument that could be tendered in a further reply to the defendant's motion for summary judgment that would alter that conclusion.

With respect to the plaintiff's request for a "stay and abey," the undersigned notes that this case has been on the court's docket since December 29, 2008 and now includes 137 docket entries. The defendant's third motion for summary judgment was filed on October 27, 2011, and the plaintiff was originally given twenty-eight days to reply. On November 29, 2011, in response to his request for a an enlargement of time, the plaintiff was given until December 30, 2011, to file his reply. He did so on January 9, 2012. While the undersigned recognizes that the plaintiff is proceeding *pro se,* the reply which he filed addresses the issues raised in the motion for summary judgment, and again, it is difficult, if not impossible, to imagine what more the plaintiff could argue that would establish that a grant of summary judgment is inappropriate.

### V. **Recommendation**

For the reasons stated, the undersigned recommends that the defendant's Third Motion for Summary Judgment (Dckt.# 128) **be GRANTED**, the plaintiff's complaint (Dckt.# 1) be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted, and the plaintiff's Letter Motion for Temporary Injunction and Stay (Dckt.# 137) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

**DATED**: January 31, 2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE